# 14-2491

## United States Court Of Appeals
### FOR THE SECOND CIRCUIT

BERTRAM HIRSCH, on behalf of themselves and all others similarly situated,

*Plaintiff-Appellee,*

IGOR ROMANOV, on behalf of themselves and all others similarly situated,

*Plaintiff-Appellee,*

v.

CITIBANK, N.A.,

*Defendant-Appellant.*

*On Appeal from the United States District Court
for the Southern District of New York*

# APPELLEES' BRIEF

James C. Kelly, Esq.
The Law Office of James C. Kelly
244 5th Avenue, Suite K-278
New York, New York 10001
(212) 930-5042

*Attorney for Plaintiff-Appellee Bertram
Hirsch and Igor Romanov*

Samuel P. Sporn
SCHOENGOLD & SPORN, P.C.
393 West 49th Street, Suite 5HH
New York, New York, 10019
Phone: (212) 964-0046

*Attorney for Plaintiff-Appellee
Bertram Hirsch and Igor Romanov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………...…iii

PRELIMINARY STATEMENT……………………………………………………..1

STANDARD OF REVIEW……………………………………………………….…..3

SUMMARY OF ARGUMENT…………………………………………………..…4

ARGUMENT……………………………………………………………...…......…5

I.     THE DISTRICT COURT DID NOT IMPROPERLY TARGET ARBITRATION PROVISIONS IN VIOLATION OF THE FAA ……....…5

II.    APPELLEES WERE NOT ON INQUIRY NOTICE OF AN AGREEMENT TO ARBITRATE …………………..…………...……......……8

    A.     The Documentary Evidence Does Not Establish That Appellees Were on Inquiry Notice of Any Agreement to Arbitrate….8

    B.     The Fact That Appellees Knew Or Should Have Known That Banks Typically Have Written Agreements Governing A Customer's Bank Account Does Not Place Appellees On Inquiry Notice Of An Agreement To Arbitrate……………………..18

III.   THE DISTRICT COURT DID NOT ERRONEOUSLY HOLD THAT CITIBANK IS NOT ENTITLED TO A PRESUMPTION OF RECEIPT...21

    A.     The Presumption Of Receipt Only Applies To Documents That Are Mailed…………………………………………….……….21

    B.     Even If The Presumption Of Receipt Applied It Cannot Be Used To Bind The Recipient To An Agreement…………………….…22

    C.     Citibank Has Not Produced Any Evidence That Appellees Were Provided With The Client Manual Or That Citibank's Alleged Policy Concerning Account Openings, Which Required

The Client Manual To Be Provided And Explained To
Customers Was Followed By Employees…………………………...23

D.    The Failure By Citibank Employees To Follow Other
Account Opening Policies Is Evidence That The Alleged Policy
To Provide And Explain The Client Manual To Customers Was
Not Followed…………………………………………………...………33

E.    Appellees Have Overcome Any Presumption Of Receipt…………..35

IV.    THE DISTRICT COURT DID NOT ERRONEOUSLY HOLD
THAT CITIBANK "WAIVED" THE ARGUMENT THAT
APPELLEES ARE BOUND BY THE CLIENT MANUAL
PURSUANT TO THE DOCTRINE OF EQUITABLE ESTOPPEL………39

V.    THE COURT SHOULD CONSIDER THE OTHER ARGUMENTS
THAT APPELLEES MADE TO THE DISTRICT COURT BELOW
THAT WERE NOT CONSIDERED……………………………...……40

CONCLUSION……………………………...…………………………..………44

# TABLE OF AUTHORITIES

**CASES**                                                                                           **Page**

*Alvarez v. Coca-Cola Refreshments, USA, Inc.*,
    914 F. Supp. 2d 256 (E.D.N.Y. 2012)…………………………………………...22

*Baylis v. Wachovia Bank, N.A.*,
    2008 U.S. Dist. LEXIS 96465 (E.D. Pa. Nov. 25, 2008)…………………..11

*Bronia, Inc. v. Ho*,
    873 F. Supp. 854 (S.D.N.Y. 1995)…………………………………………25

*Bruni v. Didion*,
    160 Cal. App. 4th 1272 (2008)…………………………….…………43

*Butvin v. DoubleClick, Inc.*,
    2001 U.S. Dist. LEXIS 2318 (S.D.N.Y. Mar. 5, 2001)……………..…..11

*Capra v. Lumbermens Mut. Casualty Co.*,
    43 A.D.2d 986 (3d Dep't 1974)…………………………………...….21

*Capobianco v. Sandow Media Corp.*,
    2012 U.S. Dist. LEXIS 143337 (S.D.N.Y. Sept. 28, 2012)…………..……36

*Carey v. 24 Hour Fitness, USA, Inc.*,
    669 F.3d 202 (5th Cir. 2012)……………………………….…………42

*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*,
    189 F.3d 289 (2d Cir. 1999)……………………………….…....……4

*Circuit City Stores v. Adams*,
    279 F.3d 889 (9th Cir. 2002)…………………………………………44

*Coach, Inc. v. Horizon Trading USA Inc.*,
    908 F. Supp. 2d 426 (S.D.N.Y. 2012)…………………………..…………24

*Crewe v. Rich Dad Educ., LLC*,
    884 F. Supp. 2d 60 (S.D.N.Y. 2012)…………………………..……...10

*Flores v. Transamerica HomeFirst, Inc.*,
    93 Cal. App. 4th 846 (2001)……………………………………..…………43

*Harris v. Blockbuster Inc.*,
    622 F. Supp. 2d 396 (N.D. Tex. 2009)…………………………..…………42

*Hines v. Overstock.com, Inc.*,
    668 F. Supp. 2d 362 (E.D.N.Y. 2009)……………………………..………15

*Hooters of Am., Inc. v. Phillips*,
    173 F.3d 933 (4th Cir. 1999)…………………………………………………44

*J.M. Davidson, Inc. v. Webster*,
    128 S.W.3d 223 (Tex. 2003)…………………………………………………42

*Kats v. Citibank, N.A.*,
    No. 2:12-cv-1607-ODW (JCx) (C.D. Cal. April 17, 2012)………….……12

*Kowalchuk v. Stroup*,
    61 A.D.3d 118 (1st Dep't 2009)……………………………………………..6

*Kurz v. Chase Manhattan Bank USA, N.A.*,
    319 F. Supp. 2d 457 (S.D.N.Y 2004)…………………………..…………25

*Larrus v. First Nat'l Bank*,
    122 Cal. App. 2d 884 (Cal. App. 1954)…………………………….……11, 12

*Lucas v. Hertz Corp.*,
    875 F. Supp. 2d 991 (N.D. Cal. 2012)…………………………….………11

*Ma v Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    597 F.3d 84 (2nd Cir. 2010)……………………….…………….….………1, 24

*Manigault v. Macy's East, LLC*,
    318 Fed. Appx. 6 (2d Cir. N.Y. 2009)………………………...…….22, 23

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001)……………………………………..………15

*Meckel v. Cont'l Res. Co.*,
    758 F.2d 811 (2d Cir. 1985)……………………………………………24

*Merced Cnty. Sheriff's Emps.' Ass'n v. Merced Cnty.*,
    188 Cal. App. 3d 662 (Cal. Ct. App. 1987)…………………………...…..6

*Netbula, LLC v. Bindview Dev. Corp.*,
    516 F. Supp. 2d 1137 (N.D. Cal. 2007)…………………………………..6

*Owusu v. HSBC Bank USA*,
    655 F. Supp. 2d 308 (S.D.N.Y. 2009)………………………………..……11

*Perry v. Thomas*,
    482 U.S. 483 (1987)………………………………………………..………..5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)………………………………………………….……40

*Revak v. SEC Realty Corp.*,
    18 F.3d 81 (2d Cir. 1994)…………………………………………………40

*Safadi v. Citibank, N.A.*,
    2012 WL 4717875 (N.D. Cal. Oct. 2, 2012)………………………………11

*Samuels v. Citibank, N.A., et al.*,
    No. 12-7646-GHK (FFMx) (C.D. Cal. Nov. 5, 2013)……………...……..41

*Schozer v. William Penn Life Insurance*,
    84 N.Y.2d 639 (1994)…………………………………..…………31

*SEC v. Espuelas*,
    905 F. Supp. 2d 507 (S.D.N.Y. 2012)………………………………..…21

*Specht v. Netscape Communs. Corp.*,
    306 F.3d 17 (2d Cir. 2002)…………………………..……....……15, 19

*Trivedi v. Curexo Tech. Corp.*,
    189 Cal. App. 4th 387 (2010)………………………...………………43

*Wachovia Bank v. VCG Special Opportunities Fund*,
   661 F. 3d 164 (2d Cir. 2011)…………………………………………...………3

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
   25 Cal. App. 3d 987 (1972)………………………………..……..……….15, 16

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
   241 F.3d 135 (2d Cir. 2001)………………………………………………………4

*United States v. Quintieri*,
   306 F.3d 1217 (2d Cir. N.Y. 2002)………………………………….………9

## **STATUTES**                                                          **Page**

Federal Arbitration Act……………………………………………...……4, 5, 20

Rules of Evidence, Rule 1002…………………………………………………….30

## **OTHER AUTHORITIES**

Restatement (Second) of Contracts § 77…………………………….…………42

## PRELIMINARY STATEMENT

This is the second appeal by Citibank N.A. ("Citibank") concerning whether Appellees are bound by an arbitration provision contained in a document that they did not sign and have sworn that they never received.

In reversing the district court on Citibank's first appeal, this Court, on October 22, 2013, held that "On remand, the court should decide whether Citibank provided Appellants with the Client Manuals. In deciding this factual issue the court should consider whether Citibank fulfilled its burden of proof in demonstrating a corporate policy regarding the provision of the Client Manual, *see e.g., Ma v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2nd Cir. 2010)", and further held "Even assuming that Appellees received the Client Manual upon opening their accounts, which they deny, the Client Manual on its face does not state that it is an agreement or that it contains terms and conditions governing these accounts", and further, " . . . there is no evidence to indicate whether new customers are alerted to the fact that their accounts are governed by the terms and conditions included in the Client Manual, or that the Client Manual contains an arbitration clause."  (SA.14-15). [1]

---

[1] References (SA.__) are to the indicated pages of the Special Appendix.

The Court also directed the district court to determine whether Appellees were equitably estopped from arguing that they did not agree to arbitration. (SA.15-16).

As the Court concluded in its Mandate and Opinion, "We express no view as to how the district court should, in the first instance, resolve these factual disputes on remand. Nor by this order, do we intend to limit the evidence that the district court may consider, but leave such decisions to its sound discretion." (SA.16).

Shortly after reversal, the parties engaged in extensive discovery, including seven depositions (one of which occurred in Los Angeles, California), focusing on the factual issues raised by the Court. The district court also held a hearing where extensive documentary evidence was submitted on the arbitration issue and where witnesses, including Appellee Bertram Hirsch ("Hirsh"), testified.

After a careful and thorough analysis of the evidence, the district court found that Appellees Hirsch and Igor Romanov ("Romanov") (collectively "Appellees") "did not agree to arbitration." (SA.17). The district court's analysis specifically concentrated on the areas of inquiry as directed by the Court, including whether there was evidence that new customers were alerted to the fact that the Client Manual contained an arbitration clause.

Judge Batts, in her well reasoned factual findings and determinations in a 47 page Opinion, specifically found that Citibank failed to meet its burdens of proof

as directed by this Court, and following extensive testimony, buttressed her Opinion with specific facts and reasons which show conclusively that no error was committed, which justifies the affirmance of her determination. (SA.17-63).

The only factual determination that the district court did not make was whether Appellees should be estopped from disavowing the terms and conditions contained in the Client Manual. That is because Citibank stated on the record in the district court that it was not going to pursue the estoppel argument because it did not want to produce documents to show that Appellees did not benefit from the Client Manual.

Accordingly, Citibank's appeal is without merit and Appellees respectfully request that the Court affirm the district court's order denying Citibank's motion to compel arbitration.

## STANDARD OF REVIEW

Appellees agree with Citibank's statement of the standard of review in that a district court's denial of a motion to compel arbitration is reviewed *de novo*.

However, the Court will affirm a district court's holding if "'there is no genuine dispute as to any material fact . . . .'" *Wachovia Bank v. VCG Special Opportunities Fund*, 661 F. 3d 164, 171 (2d Cir. 2011).

Moreover, with regard to the district court's conclusion that the parties have not contractually bound themselves to arbitrate, "findings upon which that

conclusion is based are factual and thus may not be overturned unless clearly erroneous." *See Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295 (2d Cir. 1999). In addition, "[t]he determination of whether there was a meeting of the minds sufficient to constitute a contract is one of fact . . . . [and] [t]his remains true regardless of whether the contract at issue is an arbitration agreement . . . ." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd*., 241 F.3d 135, 145 (2d Cir. 2001).

## SUMMARY OF ARGUMENT

I.     The district court did not fail to apply the preponderance of the evidence standard applicable to civil lawsuits nor did it impose special requirements for the formation of an agreement to arbitrate that are not applicable to other contractual provisions in violation of the Federal Arbitration Act ("FAA").

II.     The district court did not erroneously hold that Appellees are not bound by the terms of the Client Manual under the doctrine of inquiry notice. The Appellees were never notified that the Client Manual was an agreement or that they were agreeing to a forced arbitration provision in which they waived their right to a trial by jury or to participate in a class action.

III.     The district court did not erroneously hold that Citibank is not entitled to a presumption of receipt. Citibank failed to produce sufficient evidence to show

that its policy is to provide the Client Manual to customers or that Citibank's employees followed that policy in the regular course of business.

IV.    The district court was correct in holding that Citibank waived the equitable estoppel argument.  Citibank stated on the record before Magistrate Judge James L. Cott that it would not pursue its estoppel argument in exchange for not being required to produce documents that Appellees sought in order to prove that they did not benefit from the Client Manual.

V.    Even if the Court were to find that the district court committed clearly erroneous error, upon the Court's *de novo* review, the Court should consider the other arguments that Appellees made to the district court below that were not considered, including that the Client Manual is unconscionable and that, therefore, none of Citibank's customers should be bound by it, including the proposed class members.

## ARGUMENT

## I.    THE DISTRICT COURT DID NOT IMPROPERLY TARGET ARBITRATION PROVISIONS IN VIOLATION OF THE FAA

The district court did not improperly target arbitration provisions in violation of the FAA.  Indeed, in rendering its decision, the district court specifically cited *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987), for the proposition that "A court may not, then, in assessing the rights of litigants to enforce an arbitration

agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." (SA.40).

The district court then cited the elements of contract law in New York and California that are required to establish the existence of an enforceable agreement in general. Specifically, the district court stated that:

> To establish the existence of an enforceable agreement [in New York], a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound. That meeting of the minds must include agreement on all essential terms." Kowalchuk v. Stroup, 61 A.D.3d 118, 121 (1st Dep't 2009)(citing 22 NY Jur 2d, Contracts §§ 9, 31). "Under California law, in order to form a valid and enforceable contract, it is essential that there be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) a sufficient consideration." Netbula, LLC v. Bindview Dev. Corp., 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007)(citing Cal. Civ. Code § 1550). The consent element "requires that the parties' reach mutual assent or consent on definite or complete terms." Id. (citing Merced Cnty. Sheriff's Emps.' Ass'n v. Merced Cnty., 188 Cal. App. 3d 662, 670 (Cal. Ct. App. 1987)).[2]

(SA.40-41).

After weighing all of the evidence, the district court found 1) that there was nothing to show that Appellees actually received the alleged Client Manual; 2) that Citibank was not entitled to the common law mail box rule's presumption of receipt as there was no evidence that Citibank mailed the Client Manual to

---

[2] Citibank's argument that the requirement of mutual assent as to the arbitration agreement "prescribes for Appellees greater rights in making the Arbitration Agreement than in other provisions of the Client Manual" is without merit and not supported. Mutual assent is a required element for all essential terms of an agreement in general and is not specific to arbitration agreements.

customers upon opening up a new account and that, even if there were such evidence, Citibank failed to establish a uniform policy requiring the Client Manual that was followed by employees; and 3) that there was no evidence to show that Appellees were on inquiry notice that, upon opening the bank accounts at issue, they were agreeing to the arbitration provision contained in the Client Manual. (SA.42, 52, 59, 60).

Citibank's argument that the district court applied a special notice requirement for arbitration agreements is without merit. *See* Appellate's Brief at 22-23. Nowhere in its decision did the district court apply a special notice requirement for arbitration provisions. Further, nowhere in its decision did the district court state that parties would not be held to have chosen arbitration in the absence of an express, unequivocal agreement to that effect.

The only time that the district court refers to arbitration is in its analysis of the evidence, which begins on page 23 of its opinion, is when discussing Citibank's presumption of receipt and inquiry notice arguments.

To the extent that the district court cited Citibank's employees' knowledge of arbitration or policies related to the disclosure to customers of the arbitration agreement at issue, such a reference to arbitration cannot be avoided because it is the material term of the Client Manual at issue and bears on the issue at to whether there was mutual assent as to the term.

Had the facts been the reverse – that Citibank employees did have knowledge of the term "arbitration" and orally discussed the arbitration provision with Appellees or customers in general -- then that would have been evidence that would have leaned in Citibank's favor to show that Appellees were on inquiry notice that an arbitration provision was an agreed upon term between the parties. However, that was not the case. The district court was correct in addressing this lack of evidence.

## II. APPELLEES WERE NOT ON INQUIRY NOTICE OF AN AGREEMENT TO ARBITRATE

### A. The Documentary Evidence Does Not Establish That Appellees Were on Inquiry Notice of Any Agreement to Arbitrate

As the district court correctly found "'. . . there is nothing in the record to suggest that the [Client Manual] appear[ed] to be a contract [or that] the terms [were] called to the attention of the [plaintiffs] . . .'" and "Defendant's policies effectively hid from its clients important terms of their relationship." (SA.57-58) (internal citation omitted). Citibank fails to show how the district court's finding here was clearly erroneous.

Citibank's argument that "Appellees were indisputably notified that their Accounts were subject to an agreement and/or terms and conditions (including the Client Manual specifically) but failed to make any inquiry…[and that]…the Client Manual is clearly a contract" is without merit. *See* Appellant's Brief at 27.

Even if Citibank was able to prove that Appellees actually or constructively received the Client Manual, Appellees, and indeed **all** of Citibank's customers including the proposed class members, are not bound by terms and conditions contained in the Client Manual.

The Court has already found that "the Client Manual on its face does not state that it is an agreement or that it contains terms and conditions governing these accounts." (SA.14). This is the law of the case that was required to be followed by the district court. *United States v. Quintieri,* 306 F.3d 1217, 1235 (2d Cir. N.Y. 2002) (the law of the case "'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'") (internal citation omitted).

The Court further found that "…although Citibank has provided a declaration according to which its practices and procedures is to provide the Client Manual to new customers opening deposit accounts, there is no evidence to indicate whether new customers are alerted to the fact that their accounts are governed by the terms and conditions included in the Client Manual or that the Client Manual contains an arbitration clause." (SA.14-15).

After this Court's ruling, Citibank amended the Client Manual to state on its face that it was an agreement between the customer and Citibank, and that it contained important information. (JA.528).[3]

---

[3] References (JA.__) are to the indicated pages of the Joint Appendix.

Citibank's argument that Appellees should be bound by the Client Manual, including the arbitration provisions contained therein, because they failed to inquire as to whether there were any written agreements that were not being provided is again without support.

There is no rule, nor can justice allow for one, requiring consumers to ask every time that they enter into a simple consumer transaction, especially a take it or leave it, one-sided, consumer transaction, whether there are any written agreements that they have not been notified of.

Further, there is no evidence to show that the signature card signed by Appellees and the proposed class members placed them on notice that they were binding themselves to the Client Manual. Cases that found a binding agreement where an external agreement was referenced did so because it was clear that the agreement being signed was referencing said external agreement. For example, in *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 73 (S.D.N.Y. 2012), the Court found:

> The Agreement states that it incorporates "the accompanying Terms and Conditions," and directs signatories to "Read the Agreement and the accompanying Terms and Conditions in their entirety before signing." Agreement at 1. The Agreement adds:

> You are entitled to a copy of the Agreement and the Terms and Conditions. Field Personnel do not have authority to change the terms of the Agreement or the Terms of Conditions, except as expressly

authorized to do so herein. THE ACCOMPANYING TERMS AND CONDITIONS CONTAIN A DISPUTE RESOLUTION CLAUSE. PLEASE SEE SECTION ENTITLED CHOICE OF LAW/DISPUTE RESOLUTION.

Likewise, in *Baylis v. Wachovia Bank, N.A.*, 2008 U.S. Dist. LEXIS 96465, at *2 (E.D. Pa. Nov. 25, 2008), the signature card stated "[b]y signing below, the depositor acknowledges receipt of the bank's rules and regulations and agrees to be bound by them . . ." *See also Larrus v. First Nat'l Bank*, 122 Cal. App. 2d 884, 886 (Cal. App. 1954) (the signature card stated that the account was to be "governed by the by-laws, regulations, rules and practices of the bank."); *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 998-999 (N.D. Cal. 2012) (finding that "the car rental agreement specifically referenced the folder jacket and the terms and conditions found in it and required Mr. Martin to acknowledge that he read and understood them."); *Owusu v. HSBC Bank USA*, 655 F. Supp. 2d 308, 323 (S.D.N.Y. 2009) (finding that the agreement specifically cited the "Rules for Deposit Accounts" and the "Terms and Charges Disclosure"); *Butvin v. DoubleClick, Inc.*, 2001 U.S. Dist. LEXIS 2318, 15 (S.D.N.Y. Mar. 5, 2001)(finding that the outside agreement was specifically incorporated in the document that was signed).[4]

---

[4] Citibank was previously successful in compelling arbitration in at least two other cases based on the same facts here. The facts in this case are different from *Safadi v. Citibank, N.A.*, 2012 WL 4717875 (N.D. Cal. Oct. 2, 2012). The plaintiff in *Safadi* failed to dispute that the signature card did not reference the Client Manual

Citibank faults the district court for failing to specifically address *Larrus v. Nat'l Bank of San Mateo Cnty.*, 122 Cal. App. 2d 884 (1954), a California decision cited by the Court in *Specht*, 306 F.3d at 31, which Citibank claims is directly on point. In *Larrus*, the court held that, because plaintiffs executed signature cards acknowledging that their deposit account would be "governed by the by-laws, regulations, rules and practices of the bank," plaintiffs "had the opportunity . . . to ask for the rules and regulations it referred to if they did not want to subject themselves to them in ignorance of their contents. Having signed and returned the cards without doing so they are bound." *Id*. at 889-90.

However, this case is distinguished from *Larrus*. In *Larrus*, the signature card unequivocally referenced external documents that the customer agreed would be binding. The signature card in *Larrus* expressly stated that the customer's account would be governed by ***the*** by-laws, regulations, rules and practices of the bank. Here, the signature card merely states that customers "agree to be bound by any agreement governing any account opened in the title indicated on this card."

or any specific agreement. Instead, the plaintiff argued, among other things, that he never received the Client Manual before signing the signature card, and was not sure whether or not he received it after signing the signature card. Similarly, in *Kats v. Citibank, N.A.*, No. 2:12-cv-1607-ODW (JCx) (C.D. Cal. April 17, 2012), the *pro se* plaintiff failed to dispute that the signature card did not reference the Client Manual or any specific agreement, but argued that, even if it did exist, the Client Manual as a whole was not enforceable as it was procured by fraud as Citibank failed to disclose that it would report the receipt of the airline miles as income to the IRS (an issue that is to be determined by an arbitrator).

This is not unequivocally referencing an external document that the customer is agreeing to be bound by. This statement can be read as there not being any external document at all in existence. The statement is also referring to an "agreement" and not an external document. Citibank claims that the Client Manual is an "agreement" but produced no evidence that Citibank customers were alerted to the fact that the Client Manual is an agreement or how the document became an agreement between the parties.

In addition, the evidence shows, and the district court specifically noted, that none of Citibank's witnesses orally explained to customers or Appellees that the Client Manual is an agreement. Specifically, the district court stated in its opinion:

> Nor, contrary to Citibank's argument, did its employees make clear to clients that the Client Manual was a contract, much less that it contained an arbitration clause. Personal bankers attested to making vague statements like "Here's . . . the disclosure, manual," (Ashley Dep. 45:11-13), in addition to telling clients "this is where they can find information about their account," (Zubair Dep. 21:10-11), and that "everything they need is within there." (Safir Dep. 20:17-18.) But "that's about it." (Safir Dep. 20:19.) The employees' testimony makes clear that they never told Plaintiffs that the Client Manual was a "contract," "agreement," or contained the "terms and conditions" of their account and, indeed, employees were not even required to review the Client Manual with new clients. (Lewis Dep. 16:10-16.)

(SA.55).

Similarly, the district court found that none of Citibank's employees explained a connection between the "any" agreement reference in the signature

card and the Client Manual when customers were presented with the signature card to sign. (SA.43-44).

Appellees cannot be charged with knowledge of an agreement that they had no idea existed. In addition, consumers should not be required to orally ask every time they enter into a transaction whether there are any agreements that the consumer might not have been notified of -- especially when the document essentially strips consumers of their right to a jury trial and to participate in a class action, and shortens the statute of limitations on legal claims to only one year.

The only new documentary evidence that Citibank introduced on the inquiry issue since this Court's finding that there was "no evidence to indicate whether new customers are alerted to the fact that their accounts are governed by the terms and conditions included in the Client Manual or that the Client Manual contains an arbitration clause" is a receipt showing the amount of Appellees' deposit upon opening their accounts, monthly account statements that Appellees received in the mail after they opened their accounts, and the airline promotional offer itself which contains terms and conditions.

The account opening receipts that Appellees received did not place them on notice that they were agreeing to the terms and conditions contained in the Client Manual. The account opening receipts only had a single reference to the term Client Manual in fine print on the second page at the end of the document.

(JA.514-515).  The receipts did not state that the Client Manual was an agreement or that it contained terms and conditions related to the account that customers would be bound by, or that it contained an arbitration clause

"[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."  *Windsor Mills, Inc. v. Collins & Aikman Corp*., 25 Cal. App. 3d 987, 993 (1972); *see also Hines v. Overstock.com, Inc*., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (consumer who made on-line purchase had "no actual notice" of terms, including arbitration clause, when she was not prompted to review the terms before completing purchase).[5]

Further, the account opening receipts were provided to Appellees to show the amounts that were deposited and received by the bank.  It was not a document that was expected to contain information referring them to an external document by which they were agreeing to be bound by as a result of signing the signature

---

[5] "It is true that "[a] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing."  *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001).  But courts are quick to add: "'An exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient.  In such a case, no contract is formed with respect to the undisclosed term.'"  *Id.*; *see also Specht v. Netscape Communs. Corp*., 306 F.3d 17, 30 (2d Cir. 2002).

card. *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d at 993 ("an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.").

With respect to the monthly account statements that Appellees received, it is not disputed that these were documents received by Appellees in the mail well after their accounts were opened. Appellee Hirsch's monthly account statement does not refer to a Client Manual. (JA.518-520). It does refer to a "Customer Manual" but that is in fine print on the third page of the statement and it does not state that the Customer Manual is an agreement or contains terms and conditions. (JA.520). Further, although the statement states "Please refer to your Citibank Account Terms and Conditions for details on how we determine your monthly fees and charges" there is no indication where said "Terms and Conditions" were located or that they contained an arbitration clause. (JA.518).

With respect to Appellee Romanov's monthly account statements, the reference to the Client Manual in the monthly account statement is in fine print on the second page and does not state that the Client Manual is an agreement or that it contains any terms and conditions Appellee Romanov was agreeing to be bound by. (JA.522).

Further, like the account receipt opening documents, the monthly account statements were provided to Appellees to show them the amounts that were available in their accounts, adjusting for any debits or credits during the month. They are not documents that Appellees expected to contain information referring them to an external document by which they were agreeing to be bound by.

Moreover, Citibank is relying on an estoppel argument with respect to the monthly account statements. Citibank is attempting to bind Appellees to an agreement that they purportedly received inquiry notice of well after the account opening transactions were completed. As discussed herein, and as stated by the district court, Citibank waived its right to assert an estoppel argument. Even if they did not, Appellees did not benefit from their accounts at Citibank after receiving inquiry notice of an agreement as their funds were merely continuing to sit in their accounts so that they could receive promotional airline miles for opening the accounts (and Appellees received no benefit when they received the airline miles because they were subjected to substantial tax liabilities by receiving them); it was Citibank that benefited through the continued use of Appellees funds to lend out at high interest rates while paying virtually nothing in interest to the Appellees.[6]

---

[6] On Citibank's first appeal, the Court held that there was no evidence to determine if Appellees benefited from the Client Manual. (SA.16). There is still no evidence

Finally, Citibank claims that the airline promotional offer attached to the Complaint shows that Appellees were on inquiry notice of the Client Manual. However, the promotional offer was not signed by Appellees and it does not refer to a Client Manual or any definitive outside agreement. (JA.35-36). It lists several terms and conditions and can be read that all of the terms and conditions related thereto are contained therein unless Citibank provided that other terms or conditions were "applicable." *Id*.

**B.     The Fact That Appellees Knew Or Should Have Known That Banks Typically Have Written Agreements Governing A Customer's Bank Account Does Not Place Appellees On Inquiry Notice Of An Agreement To Arbitrate**

Citibank attempts to force a distinction between sophisticated consumers and non-sophisticated consumers and again asks this Court to charge Appellees with knowledge of the terms and conditions of the Client Manual and the arbitration agreement contained therein because Appellees were sophisticated and should have known that there was a written agreement governing their accounts yet failed to ask for it.

Citibank argues that because Hirsch is a lawyer and Romanov is a businessman, and both knew that customer relationships with banks will typically be governed by a written agreement, that they should be bound to the Client

of this because Citibank refused to engage in discovery to show that Appellees did not benefit from the opening of their accounts.

Manual because they did not specifically ask for a written agreement governing their accounts. Citibank's argument is without merit. Appellant's Brief at 35-38.

The fact that banks and large corporations that transact with consumers typically have written agreements with customers cannot insulate Citibank here. If Citibank intended to bind its customers to the terms and conditions contained in the Client Manual it should have properly presented the terms and conditions to the customer for acceptance. Further, as the district court stated:

> So while "plaintiffs may have been aware" that bank accounts are governed by some terms and conditions, Specht, 306 F.3d at 31-32; (see Hirsch Dep. 31:12-20), a reasonable person would be inclined to think about withdrawal and transfer polies [sic], check writing limits, minimum account balances, and fees –- the items disclosed by Citibank during the account opening process. (Ashley Dep. 40:17-41:19, 56:7-24.) Plaintiffs' general awareness that some terms would govern the accounts "does not mean that they reasonably should have concluded that the [agreement] contained a notice of" an arbitration clause. Specht, 306 F.3d at 32.

(SA.57).

Fairness dictates that if a company is willing to enter into the transaction with the customer, without providing a written agreement or notifying the customer of the existence of a written agreement, the company cannot later bind the customer to the undisclosed written agreement. To allow otherwise, would allow a company to sneak terms into a document that the customer was not aware existed and then allow the company to turn around and surprise the customer with an agreement that the company claims was in place at the time of the transaction.

Further, there are other terms in the Client Manual that, under Citibank's argument, customers would be bound to even though they had nothing to do with terms and conditions related to fees or rights and duties with respect to the governing of their account. For example, there is a provision shortening the statute of limitations on any claim to one year, and there is a provision purportedly waiving the customer's right to participate in a class action. (JA.416, 435).

Also, contrary to Citibank's argument, even if Appellees asked specific details as to monthly charges or account fees, there is no evidence that the Citibank representatives would have informed them that said information is in the Client Manual and that the Client Manual was an agreement. The more likely response would be that the representative's would have orally stated what the monthly fees and charges were.

It is also very important that arbitration agreements are adequately disclosed to customers as the agreements provide that the customer is waiving a constitutional right to a jury trial. If, as Citibank argues, the FAA requires arbitration under the circumstances herein, this would deny the procedural due process rights of the Appellees, an application of the law that clearly should be rejected.

## III. THE DISTRICT COURT DID NOT ERRONEOUSLY HOLD THAT CITIBANK IS NOT ENTITLED TO A PRESUMPTION OF RECEIPT

The district court was correct in finding that "Citibank is not entitled to a presumption that Plaintiffs received the Client Manual." (SA.52).

Citibank cannot bind Appellees to the Client Manual by submitting documentary evidence and testimony in an attempt to show that it was Citibank's policy and procedure to provide the Client Manual to "new" customers.

### A. The Presumption Of Receipt Only Applies To Documents That Are Mailed

Although New York law has established a presumption that a party has received documents when mailed to the party's address in accordance with regular office procedures, the presumption of receipt rule or the common law "mailbox" rule only applies to mailings -- not the hand delivery of a document from person to person. *SEC v. Espuelas*, 905 F. Supp. 2d 507, 522 (S.D.N.Y. 2012) ("the presumption of receipt relates to mailing, not the hand-delivery of a document"). The doctrine provides that a properly addressed piece of mail placed in the care of the postal service or other mail delivery service is presumed to have been delivered.

As the district court noted, "[e]vidence of 'actual mailing must be established before the presumption of receipt arises.' Capra v. Lumbermens Mut.

Casualty Co., 43 A.D.2d 986, 986-87 (N.Y. App. Div. 3d Dep't 1974)." (SA.52).

The fact that Citibank did not mail the Client Manual to Appellees is not disputed.

**B.    Even If The Presumption Of Receipt Applied It Cannot Be Used To Bind The Recipient To An Agreement**

Moreover, the presumption of receipt cases only charge recipients with notice of a document. More is required to bind a recipient to an agreement. *See Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256, 258-259 (E.D.N.Y. 2012) (explaining the distinction that the presumption of receipt only provides notice to the recipient, it cannot, by itself, bound the recipient to an agreement).

The Court's analysis in *Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6, 7-8, 2009 U.S. App. LEXIS 6234, 4-6 (2d Cir. N.Y. 2009), is also instructive on this distinction. In *Manigault*, the Court applied the presumption of receipt doctrine to a mailing of an arbitration agreement containing an opt out provision to an employee, and the employee argued that she should be entitled to opt out, even though opting out late, because she did not receive the agreement in the mail. Macy's submitted affidavits of employees stating that the employee was mailed the documents regarding the dispute resolution program at the address specified in its internal personnel database, that each package contained a return address, and that the company's records show that the mailing to the employee was not returned as

undeliverable.  The Court charged the employee with receipt of the document and the employee could not opt out as it was not timely.

But the court went on further to address whether the parties agreed to arbitrate.  The Court found that Manigault continued to work after receiving *notice* of the arbitration program and found that Manigault, therefore, agreed to arbitration by continuing with her employment.  So, in *Manigault*, it was more than just constructive notice of the agreement obtained from the presumption of receipt rule that was required to show an actual agreement to arbitrate.  The court went on to apply an estoppel argument – that the employee benefited from the agreement through continued employment.

Accordingly, even if the presumption of receipt applied to the Client Manual, it cannot be used to bind Appellees to an agreement because Appellees were not on notice that the Client Manual was an agreement.

**C.      Citibank Has Not Produced Any Evidence That Appellees Were Provided With The Client Manual Or That Citibank's Alleged Policy Concerning Account Openings, Which Required The Client Manual To Be Provided And Explained To Customers Was Followed By Employees**

Even if the mailbox rule's presumption of receipt were to apply to this case, the cases applying said rule require contemporaneous proof established near the time of the transaction evidencing the mailing and evidence that policies and procedures requiring the mailing were actually followed.

For example, *in Ma v. Merrill Lynch, Pierce, Fenner & Smith*, 597 F.3d 84, 92 (2d Cir. 2010), the Court noted that the district court correctly determined that "a presumption of receipt arises where, as here, the record establishes office procedures, **followed** in the regular course of business, pursuant to which notices have been addressed and mailed." *Ma*, 597 F.3d at 92 (emphasis added). The Court also found that the record reflected proof that the documents at issue were mailed to the recipient from the company's location, and that the recipient received them. *Id*. at 92-93.

In *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 814-815 (2d Cir. 1985), the record reflected a significant amount of evidence that the document at issue was actually mailed to the recipient's address, including an affidavit from the employee who caused the document to be mailed, and uncontested evidence showing the recipient's name and address in the system that prepared the document for mailing.

Unlike in *Ma* and *Meckel*, Citibank failed to provide any evidence to show that its corporate policy concerning account openings, that required the Client Manual to be provided and explained to customers was followed. *See* also *Coach, Inc. v. Horizon Trading USA Inc*., 908 F. Supp. 2d 426, 432, 2012 U.S. Dist. LEXIS 160528, 10-11, 2012 WL 5451274 (S.D.N.Y. 2012) (holding that "[t]o invoke the presumption, a party must first produce evidence of mailing" and finding that Coach has done so, in the form of the FedEx delivery receipt as well as

an affidavit of the employee who mailed the documents via FedEx); *Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 464 (S.D.N.Y 2004) (there was uncontested evidence that the arbitration agreement at issue was actually mailed to the recipient's residence); *Bronia, Inc. v. Ho*, 873 F. Supp. 854, 859, 1995 U.S. Dist. LEXIS 605 (S.D.N.Y. 1995) ("Traeger, the person responsible for actually mailing these letters, testified that she properly sent them to Tradefield and her testimony is corroborated by the Federal Express receipts and the fact that the USDA received the same notice mailings around the same time.").

Accordingly, the district court was correct in ruling that even "[i]f Citibank had a corporate policy regarding account openings, the record makes clear that its employees consistently ignored parts of the policy" and that "there also is no evidence in the file documenting receipt of the Client Manual." (SA.52).

Citibank argues that the following evidence established that Citibank had a corporate policy and practice to provide the Client Manual to every new customer that opens up an account:

- Nancy Lewis, Citibank's Rule 30(b)(6) witness, testified that pursuant to Citibank's "required policy and procedure," the Client Manual is provided to all customers when they open a deposit account, and this same policy and practice is required at every single Citibank branch in the United States. (JA.601 at 36:16-17; JA.595 at 10:11-22; JA.596 at 15:12-15);

- George Lotto, the manager of the Great Neck branch, testified that it is Citibank "policy and practice" to provide the Client Manual to

customers at the time they open an account. (JA.315 at 48:7-9; JA.316 at 49:8-11);

- Pursuant to Citibank's express directives regarding the opening of new accounts contained in Citibank's "Personal Banker Foundations" manual, Citibank's personal bankers are required to "[c]onsolidate relevant documents (i.e. Client Manual and Disclosures) and provide them in the Welcome Folder" that is given to customers opening deposit accounts. (JA.494); and

- A "Customer Care Checklist" contained in the "Personal Banker Foundations" manual that serves as a reference for Citibank's personal bankers when opening accounts expressly states: "Client Manual and Marketplace Addendum – Explained and given to Client." (JA.496).

Appellant's Brief at 47.

The evidence submitted by Citibank fails to establish a corporate policy and practice to provide Client manuals to new customers and fails to establish that the corporate policy was actually followed.

Nancy Lewis ("Lewis"), who is a senior vice president of Citibank and responsible for creating and implementing all policies and procedures at Citibank did not work at the Great Neck branch where Appellee Hirsch opened up his account, nor did she work for the Marina Del Ray branch where Appellee Romanov opened up his account. (JA.594 at 6:8-22). Citibank has not provided any documents or correspondence from Citibank's headquarters to Citibank branches or branch managers stating that Client Manuals must be provided to every customer that opens up an account.

The testimony from George Lotto that Citibank has a policy to provide the Client Manual is not sufficient to establish the presumption of receipt. Mr. Lotto did not meet personally with Appellee Hirsch and he cited no documentary evidence showing that Citibank's requirement to provide the Client Manual upon account openings was actually followed. Further, as the district court found, his testimony was conflicting and unreliable. (SA.47, n.14).

The Personal Banker Foundation manual relied upon by Citibank cannot be considered as evidence as it states on page two that it was originally printed on 1/2006 and that it was revised on 3/13, well after Appellees opened up the accounts at issue in 2010. (JA.493). The Personal Bank Foundation document conspicuously highlights, in a sample "Customer Care Checklist" contained therein, that one of the steps upon opening a customer account is that "Client Manual and Marketplace Addendum – Explained and given to Client." (JA.496). Citibank has not produced the revisions to the Personal Banker Foundation manual, despite repeated requests by Appellees, nor has it produced the purported manual that was in effect at the time Appellees opened up their accounts in October 2010. Lewis testified that she had never seen the version of the Personal Banker Foundation manual submitted by Citibank. (JA.599 at 26:12-16). Accordingly, there is no telling when the statements contained therein related to the Client Manual were in effect.

In addition, the Personal Banker Foundation manual relied upon by Citibank has never been seen by Michael Ashley ("Ashley") at all. (JA.550 at 73:9-74:7). Ashley is the Citibank banker that opened up Hirsch's accounts in October 2010. Ashley, who no longer works at Citibank, and began working at Citibank in July of 1985, has also never seen the Customer Care Checklist relied upon by Citibank. (JA. 533, 535, 550 at 7:24, 13:5-7, 74:8, 75:6).

Indeed, Citibank has not produced any Customer Care Checklists in connection with Appellees' accounts. Although the steps contained in the Customer Care Checklist, including the step stating "Client Manual and Marketplace Addendum – Explained and given to Client Explain," are purportedly checked off by Citibank personal bankers for each account opening, not one Customer Care Checklist has been produced by Citibank for any of its customers. (JA.496).

Vivan Safir ("Safir"), another Citibank banker responsible for opening up accounts testified that the Customer Care Checklists – the only contemporaneous documentary evidence that may have existed to show a Client Manual was provided to a customer - are destroyed after a customer opens up an account. (JA.640 at 43:11-14).

Moreover, in direct violation of the alleged requirement to explain the Client Manual to customers as contained in the Customer Care Checklist and the Personal

Foundation manual, Lewis, who is responsible for Citibank's policies and procedures, has stated that there is no policy or procedure to review the Client Manual with customers. (JA.596 at 16:10-16).[7]

Lewis also testified that she did not know what the term arbitration was, and that there were no procedures or training in place to train Citibank employees regarding what arbitration is. (JA.595-596 at 12:9, 16:17). Citibank's personal bankers have also testified that they do not go over any provision in the Client Manual or the arbitration provisions contained therein unless asked by the customer, including Fazri Zubair ("Zubair"), the banker that opened up Appellee Romanov's account and Ashley. (JA546-547 at 60:9-61:7; JA.548 at 65:2-9; JA.681-682 at 13:22-25, 14:11-25, 20:3-11). Said witnesses have also testified that they do not know what the term "arbitration" means or provided incorrect explanations as to what the term "arbitration" means. (JA.547 at 61:20-62:6; JA.681 at 15:1-9).

Further, Citibank now admits that the Client Manual, which was attached to the Declaration of Joan Haslam, dated March 14, 2012, submitted in support of

_____

[7] Appellees objected to Citibank's entry of the Personal Banker Foundation manual as proof that this was the procedure that was in place at the time Appellees opened up their accounts at Citibank. However, the district court denied Appellees request. Upon this Court's *de novo* review, Appellees respectfully request that the Court reject the entry of Personal Foundation Document as evidence. Just as Citibank has amended the Client Manual to state that it is an agreement on its face, Appellees believe that Citibank revised the Personal Banker Foundation manual to state that the Client Manual was provided and reviewed with the customers.

Citibank's Motion to Compel Arbitration, and which Citibank represented to this Court as the Client Manual that was provided to Appellees, was never provided to Appellees. (JA.257). Citibank originally alleged that a Client Manual dated January 2010 was provided to Appellees. *Id*. Citibank now claims that a Client Manual dated July 2010 was provided to Appellees. *Id*.

Citibank would like the Court to believe that its policies and procedures were to provide a Client Manual to Appellees and that the policies and procedures were actually followed, when it cannot even determine what version Client Manual was allegedly provided to Appellees.

Citibank has also violated the best evidence rule as it has not produced an original of the alleged Client Manual provided to Appellees. The Client Manual that was produced was a copy of the alleged text of the Client Manual printed on 8 ½ x 11 size pages. (JA.46). However, Citibank's employees have stated that the Client Manual is in a pamphlet or booklet form. (JA.547, 595 at 63:5-8, 11:9-11). Ashley also testified that the Client Manual was "small" and there are two separate client manuals – one for business and one for personal. (JA.547 at 63:9-15).

Federal Rules of Evidence, Rule 1002 states "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Further, Federal Rules of Evidence, Rule 1003 states "[a] duplicate is admissible to the same extent as the original unless a

genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  The failure to produce the Client Manual in its original form was prejudicial to Appellees because it shows that it was much more difficult for customers to see the document, even if it was contained in the so-called welcome kit that Appellees also never received.

Citibank has not provided an explanation as to why an original of the Client Manual has never been produced, and therefore the Court should not consider the Client Manual in its *de novo* review.  *See also Schozer v. William Penn Life Insurance*, 84 N.Y.2d 639, 644 N.E.2d 1353, (1994) ("As presently understood in this State, the best evidence rule requires that whenever a party seeks to prove the contents of a writing, the original must be produced or its absence satisfactorily explained.").  Citibank has also not produced the Welcome Folder that it claims is provided to customers and contains the Client Manual.

Citibank failed to provide any documentary evidence that its alleged corporate policy to provide Client Manuals to new customers when they open up their account is actually followed.  All that Citibank has submitted is testimony from personal bankers that they provide a Client Manual to each customer in general when an account is opened.  Said testimony has been obtained from the bankers after the lawsuit was filed, and is not sufficient to establish receipt – one cannot expect an employee to say that he/she did not follow corporate policy.

Citibank has not submitted any documentary evidence, and several of Citibank's witnesses have admitted that there is no documentary evidence, aside from the signature card, to show that Citibank's policy to provide a Client Manual was actually followed, including Zubair and Lewis. (JA.596 at 13:7-13; JA.685 31:20-25). Citibank has also stated in its response to Plaintiffs' First Set of Interrogatories, Interrogatory No. 2, that the only documentary evidence to show receipt of the Client Manual is the signature card. (JA.253).

Lewis has stated that there are no audits or any other testing done to determine that Citibank's alleged policy requiring the provision of a Customer Manual to customers is performed. Specifically, Lewis stated:

> Q. But how do you know that it is being followed? Do you do audits? Do you have them check mark anything like a check list or any kind of indication that yes at the time they opened an account they provide a client manual or anything like that?
>
> A. No.

(JA.601 at 36:18).

In addition, Ashley specifically stated that he did not recall whether or not he gave the Client Manual to Appellee Hirsch (JA.553 at 86:10-87:6), and Zubair does not even remember meeting with Appellee Romanov. (JA.680 11:14-16).

**D.** **The Failure By Citibank Employees To Follow Other Account Opening Policies Is Evidence That The Alleged Policy To Provide And Explain The Client Manual To Customers Was Not Followed**

Citibank also had other alleged policies that were produced in discovery and submitted to the district court as evidence.

One of the documents produced, titled National Forms Center, which is allegedly available to employees through a computer terminal, is a step-by-step guide as to what the employee is required to do upon opening an account. (JA.506). On the page titled Customer Account Opening Stage 1: Introduction, one of the steps that Citibank employees are to take when opening up a bank account is to "[a]ccurately and clearly state all material information on terms, conditions, risks and costs to the customer." (JA.508). Additionally, on the next bullet point, it states "[i]f a disclosure is required to be read to a customer, be sure to deliver it with an appropriate pace and provide clarity as necessary." *Id*. Further, it states to "[c]heck with the customer to ensure they understand the information you have provided," and also "[r]espond to any questions the customer may have" and "[m]ake representations that are clear, accurate and likely to be understood correctly." *Id*.

The evidence is clear that Citibank employees failed to state that the Client Manual contains an arbitration agreement – clearly a material term. Lewis testified that she did not know what the term "arbitration" is, and that there were no

procedures or training in place to train Citibank employees regarding what arbitration is. (JA.595-596 at 12:9, 16:17). Citibank's personal bankers, including those that opened up Appellees' accounts, also testified that they do not go over any provision in the Client Manual or the arbitration provisions unless asked. (JA546-547 at 60:9-61:7; JA.548 at 65:2-9; JA.681-682 at 13:22-25, 14:11-25, 20:3-11).

Moreover, Ashley has stated that he was aware that the Client Manual contained an arbitration clause, which takes away a constitutional right to a trial by jury, but he did not explain or go over it with customers, or even point out that the material term existed, all in violation of Citibank's policies and procedures. (JA.547-549 at 64:7-72:10).

Citibank has conducted no audits, or provided any checklists, or other documentary evidence to show that the steps requiring the disclosure of all material information was followed.

Citibank argues that the district court erred by considering the National Forms Center document and other policies that bankers were required follow in determining if Citibank was entitled to the presumption of receipt. However, Citibank introduced said evidence to establish that Citibank had account opening procedures that were followed, which included providing the Client Manual to customers. Accordingly, Citibank forced the district court to consider the

document.  Moreover, Zubair testified that he relied on said document as a "visual checklist" to determine that each of the required documents and disclosures were provided to customers.  (JA.684 at 28:15-29:3).  Accordingly, evidence that other account opening procedures were not followed as required by Citibank is evidence that Citibank's alleged policy to provide and review the Client Manual with customers was not followed.

### E.     Appellees Have Overcome Any Presumption Of Receipt

The rule in the presumption of receipt cases, that denial of receipt, without more, is insufficient to rebut the presumption, should not be applied in a non-mailing case.

A presumption makes sense in the mailing cases, because the recipient can typically show more than mere denial of receipt by showing, for example, that they did not live at the address at the time of the alleged delivery or that the mailing was addressed to the wrong address, or, if it was a question of timing, as is in some instances, that the post stamp or certified mailing receipt shows a later date than it was allegedly delivered.

It would be an injustice to allow one party to rely on testimony to state that it is regular practice and procedure to deliver the document, when there is no testimony or documentary evidence to show that the document was actually delivered, and disallow the other party to rely on testimony that it did not receive

the document. *Capobianco v. Sandow Media Corp.*, 2012 U.S. Dist. LEXIS 143337, 8-12, 2012 WL 4561761 (S.D.N.Y. Sept. 28, 2012) (finding that denial of receipt creates a factual issue to be determined based on the credibility of the parties when there is no evidence of actual mailing).

Even if the rule applied, Appellees have not merely stated that they did not receive the document at issue. Appellee Hirsch unequivocally stated in his declaration submitted in opposition to Citibank's motion to compel "I never received the Citibank Client Manual that Citibank refers to in it motion to compel arbitration." (JA.125 at ¶ 14). Hirsch went on to state "I kept all the papers the Citibank gave to me. I looked through all of them and I only received the following four documents upon opening my accounts:…" *Id*. at ¶ 15. Hirsch went on to list the documents, and the Client Manual was not one of them. *Id*.

One of the documents Hirsch received was Citibank's Privacy notice, which was a separate document printed on 8 ½ x 11 paper. (JA.525). The privacy notice received by Hirsch appears to contain the same text as the privacy notice that is part of the Client Manual that Citibank claimed it provided to Hirsch, except that the format for the page numbers are different and it was on 8 ½ x 11 paper as opposed to pamphlet form like then one found in the Client Manual. (JA. 70, 525). The fact that Ashley provided a separate privacy notice to Hirsch is proof that

Hirsch did not receive the Client Manual because it is not likely that he would have

provided Hirsch two identical privacy notices.[8]

Hirsch also testified at his deposition every detail from when he first went

into the Great Neck, NY, Citibank branch where he opened up his account, to

where he sat in Mr. Ashley's office, to what was exactly discussed, and that the

documents he received were not in a folder, or the so-called Welcome Folder.

(JA.574-577 at 46:1-59:11. Further, Ashley has stated that he has no personal

recollection of giving the Client Manual to Hirsch and that no one ever sought to

---

[8] At oral argument on Citibank's first appeal, the Court repeatedly asked Citibank
what additional evidence it had to show that Appellees received the Client Manual.
The Court explained to Citibank that if no additional evidence was forthcoming, it
could make a ruling based on the record without the need for remand. In response,
Citibank stated to the Court that it could submit a declaration from Citibank that
the privacy notice that Appellee Hirsch claimed he received at the time that he
opened up his accounts was actually attached to the alleged Client Manual,
inferring that if Hirsch received the privacy notice, he must have received the
Client Manual. This Court's reversal of the district court, at least in part, was
based on Citibank's representation that it could produce additional evidence
proving that Appellees, in fact, had received the Client Manual. On remand,
Citibank produced no declaration or other evidence on this point. In fact, the
evidence established the opposite of what Citibank represented. Nancy Lewis,
Citibank's Rule 30(b)(6) witness, testified that there is a separate privacy notice,
aside from the one that is a part of the Client Manual, that is available for
customers who "ask for just a copy of privacy notice." (JA.599-600 at 28:7-
29:16). Although Ms. Lewis claimed that the privacy notice is only available for
customers who ask for it, the heading of the privacy notice received by Hirsch
contradicts this statement as it states it is for "New Customers." (JA.525).

obtain a statement or certification that he gave a copy of the Client Manual to Hirsch. (JA.553 at 86:10-20, 87:7-13).

Similarly, Appellee Romanov did not merely deny receipt of the Client Manual but testified as to the exact details of what happened on the day that he visited the Citibank branch to open his accounts, including what was orally stated to him by Zubai. (JA610-611). Zubair does not remember meeting Romanov, and thus, cannot recall what documents were provided to him, and no one at Citibank asked Zubair if he recalled providing the Client Manual to Romanov. (JA.680 at 11:14-16; JA.685 at 29:5-19).

In addition, the fact that both Appellees stated that they did not receive the Client Manual is evidence that Citibank employees did not follow Citibank's alleged policy requiring Client Manual's to be provided to customers. Similarly, the fact that Citibank was not able to show any contemporaneous business record created at or near the time that Appellees' accounts were opened, including a Customer Care Checklist, indicating that Appellees were provided with the Client Manual upon opening their accounts is evidence that the office practice was not followed with respect to Appellees.

**IV. THE DISTRICT COURT DID NOT ERRONEOUSLY HOLD THAT CITIBANK "WAIVED" THE ARGUMENT THAT APPELLEES ARE BOUND BY THE CLIENT MANUAL PURSUANT TO THE DOCTRINE OF EQUITABLE ESTOPPEL**

The district court was correct in finding that Citibank waived its right to argue that Appellees are bound by the Client Manual pursuant to the doctrine of collateral estoppel. (SA.61). On Citibank's first appeal, the Court held that Citibank may assert an estoppel argument in an attempt to bind Appellees to the terms and conditions in the Client Manual notwithstanding that Citibank raised the argument for the first time on appeal. (SA.15-16).

However, when the parties conducted discovery on the issue of estoppel, Citibank only produced evidence in an attempt to support an argument that Appellees' benefitted from the opening of their accounts because they obtained a minuscule amount of interest on the money deposited in their accounts.

Citibank would not produce any documents or agree to any discovery relating to the Form 1099s that were reported to the IRS and the tax liabilities that occurred as a result, or Appellees expectations that they did not benefit from opening up their accounts as a result of said tax liabilities.

Magistrate Judge Cott was appointed by Judge Batts to hear and determine the parties' discovery issues. In return for Citibank's agreement to drop its estoppel argument, Magistrate Judge Cott prohibited discovery on evidence concerning estoppel. Citibank's counsel, in the hearing before Magistrate Judge

Cott, acknowledged on record that Citibank would drop its estoppel argument. (JA.238-289). Accordingly, the district court was correct in finding that Citibank waived its right to raise the estoppel argument at a later date.

## V. THE COURT SHOULD CONSIDER THE OTHER ARGUMENTS THAT APPELLEES MADE TO THE DISTRICT COURT BELOW THAT WERE NOT CONSIDERED

Upon its *de novo* review, the Court should consider the various other arguments that Appellees raised below regarding the inapplicability of the arbitration clause at issue.

Appellees argued before the district court that the arbitration agreement was not enforceable because Citibank misrepresented the terms of the arbitration agreement and induced customers to agree to the arbitration agreement by stating that it excluded disputes filed by customers in small claims court. (JA.434).[9]

Such a provision is enticing to customers as it provides them with a low cost, *pro se* friendly, neutral and unbiased court to litigate their claims. However, the provision failed to disclose that Citibank would remove small claims to federal court at its discretion even if the customer did not assert any federal claims,

---

[9] *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 91 (2d Cir. 1994) ("[F]raud in the inducement consists of misrepresentations that cause the maker of the note to enter the transaction."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967) (permitting federal courts to adjudicate claims of "fraud in the inducement of the arbitration clause itself" because such claims "g[o] to the 'making' of the agreement to arbitrate").

thereby, depriving consumers of the small claims process and subjecting the claims to arbitration, or tying up the consumer in additional litigation in federal court – requiring them to oppose the removal.[10]

On identical facts of this case, just recently, the Honorable George H. King, Chief U.S. District Judge, from the U.S. district court, Central District of California, rejected Citibank's attempt to remove a small claims *pro se* case to federal court. *See Samuels v. Citibank, N.A., et al.*, No. 12-7646-GHK (FFMx) (C.D. Cal. Nov. 5, 2013) (Docket # 25).

As a result of Citibank's actions in frustrating small claims plaintiffs, Appellees also argued that the alleged arbitration agreement could not be performed by its own terms. The arbitration agreement stated that the consumer must select either the American Arbitration Association ("AAA") or JAMS. (JA.434). However, both AAA and JAMS state that they will not administer consumer arbitrations if a party is precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction. (JA.177, 181). Here, Citibank has taken action that precludes Appellees, and customers, from obtaining relief from small claims court, thus rendering arbitration impossible.

---

[10] Citibank has attempted to remove several small claims on the identical facts of this case to federal court so to move to compel arbitration, some of them successful as the *pro se* litigants had no idea what to argue.

Appellees also argued that the arbitration agreement in the Client Manual was illusory and therefore void, as the agreement allows Citibank to unilaterally modify the agreement without limitation, notice, or Appellees' consent. (JA.50). This amounts to a one-sided escape hatch for Citibank.

Such a provision renders the arbitration agreement illusory and unenforceable because it allows the company to retroactively modify or terminate the agreement without notice. *See Carey v. 24 Hour Fitness, USA, Inc*., 669 F.3d 202, 209 (5th Cir. 2012) (finding an arbitration provision illusory and unenforceable because 24 Hour Fitness retained the unilateral right to modify or terminate the arbitration provision); *Harris v. Blockbuster Inc*., 622 F. Supp. 2d 396, 398-399 (N.D. Tex. 2009) (finding Blockbuster's arbitration agreement with its customers illusory because the agreement provides "Blockbuster reserves the right to modify the Terms and Conditions, including the section that contains the arbitration provision, 'at its sole discretion' and 'at any time . . .'"); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003) (collecting cases); Restatement (Second) of Contracts § 77 cmt. a, illus. 2 (1979).

In addition, Appellees argued that the arbitration agreement does not apply to checking accounts. The Client Manual expressly states that it applies only to "deposit, Ready Credit®, Checking Plus ® or Checking Plus ® (variable rate) accounts." (JA.68). However, the checking account that Appellee Hirsch opened

was a "regular checking" account. (JA.125, ¶¶ 11, 15(c) (stating that he declined Citibank's Checking Plus product)). The Client Manual does not govern "regular checking" accounts. Accordingly, Citibank's motion to compel arbitration should have been denied on this ground alone.

Finally, Appellees argued that the arbitration agreement was unconscionable because, among other things, (1) the Client Manual was a contract of adhesion presented on a take it or leave it basis that buried the arbitration provisions at the end of the document, and failed to disclose to customers that Citibank would remove small claims to federal court even if the customer did not file any federal claims; (2) Citibank failed to provide a copy of the American Arbitration Association Rules, JAMS Rules, or disclose the arbitration fees; (3) the Client Manual (and thus the arbitration provision) contained a section shortening the statute of limitations to one year arguably barring Appellees' claims, and (4) the arbitration agreement allows Citibank to unilaterally modify the agreement. *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853-854 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."); *Bruni v. Didion,* 160 Cal. App. 4th 1272, 1293 (2008) (finding procedural unconscionability where arbitration clause was buried in the back of a 30 page document and plaintiffs were never asked to sign or initial the booklet, much less the arbitration provisions); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387,

393 (2010) ("failure to provide a copy of the arbitration rules . . . supported a finding of procedural unconscionability."); *Circuit City Stores v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) (an arbitration clause that "imposes a strict one year statute of limitations" is substantively unconscionable); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (upholding district court's denial to compel arbitration because, among other things, the arbitration agreement allowed Hooters to modify the rules of arbitration without limit and "[n]othing in the rules even prohibits Hooters from changing the rules in the middle of an arbitration proceeding.").

The Client Manual should also be found to be unconscionable because it does not disclose on its face that it is an agreement.

## CONCLUSION

For all the reasons stated, the Court should affirm the district court's order denying Citibank's motion to compel arbitration.

Dated: New York, New York
     December 12, 2014

                            Respectfully submitted,

                            By: /s/ James C. Kelly
                            James C. Kelly (JK-9616)
                            **THE LAW OFFICE OF JAMES C. KELLY**
                            244 5th Avenue, Suite K-278
                            New York, New York 10001
                            Tel: 212-920-5042
                            Fax: 888-224-2068

Email: jkelly@jckellylaw.com

Samuel P. Sporn
**SCHOENGOLD & SPORN, P.C.**
World Wide Plaza
393 West 49th Street, Suite 5HH
New York, New York, 10019
Phone: (212) 964-0046

*Attorney for Appellees*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,920 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14 pt. Times New Roman font.

Dated: New York, New York
       December 12, 2014

By: /s/ James C. Kelly
James C. Kelly (JK-9616)
**THE LAW OFFICE OF JAMES C. KELLY**
244 5th Avenue, Suite K-278
New York, New York 10001
Tel: 212-920-5042
Fax: 888-224-2068
Email: jkelly@jckellylaw.com

Samuel P. Sporn
**SCHOENGOLD & SPORN, P.C.**
World Wide Plaza
393 West 49th Street, Suite 5HH
New York, New York, 10019
Phone: (212) 964-0046

*Attorneys for Appellees*

## CERTIFICATE OF SERVICE

I, James C. Kelly, hereby certify pursuant to Fed. R. App. P. 25(d) that, on December 12, 2014, I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the Court's CM/ECF system, and thereby caused the foregoing Brief to be served upon counsel for Appellant and all other participants in this case by electronic mail generated by the Court's CM/ECF system in accordance with Local Rule 25.1(h).

Dated: December 12, 2014        Respectfully submitted,

/s/ James C. Kelly
James C. Kelly, Esq. (JK-9616)
**The Law Office Of James C. Kelly**
244 5th Avenue, Suit K-278
New York, New York 10001
Tel: 212-920-5042
Fax: 888-224-2068
Email: jkelly@jckellylaw.com

*Attorney for Appellees*